**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**UNITED STATES OF AMERICA**
   **Plaintiff,**

 v.            **Case No. 07-CR-215**

**DEREK SEIB**
   **Defendant.**

---

## SENTENCING MEMORANDUM

Defendant Derek Seib pleaded guilty to conspiracy to distribute ecstasy, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) & 846, and the probation office prepared a pre-sentence report ("PSR") in anticipation of sentencing. Based on the amount of ecstasy involved in the offense, the PSR set a base offense level of 24 under U.S.S.G. § 2D1.1(c)(8),[1] then subtracted 3 levels for acceptance of responsibility, § 3E1.1, producing a final level of 21. Coupled with a criminal history category at III, level 21 produces an imprisonment range of 46-57 months.

However, the PSR also concluded that defendant qualified as a career offender under U.S.S.G. § 4B1.1 based on his four prior drug-related convictions. (PSR ¶ 28.) This designation had the effect of increasing defendant's offense level to 29 (base level 32, U.S.S.G. § 4B1.1(b)(C), minus 3 for acceptance) and his criminal history category to VI, § 4B1.1(b), for a range of 151-188 months.

On review of the predicate convictions listed in the PSR, I concluded that defendant was not a career offender. I therefore adopted a guideline range of 46-57 months. The government

---

[1] Under U.S.S.G. § 2D1.1 cmt. n.11, an ecstasy tablet weighs 250 mg, and under the § 2D1.1 drug equivalency table, 1 gram of ecstasy converts to 500 grams of THC. The instant offense involved 683 ecstasy tablets, which converts to 85 kg of THC.

then moved for a downward departure under U.S.S.G. § 5K1.1 based on defendant's substantial assistance, and I granted the government's motion, reducing the range by 6 levels. Finally, I imposed a sentence at the low end of the resulting range after considering the factors set forth in 18 U.S.C. § 3553(a).

## I. GUIDELINES

Under U.S.S.G. § 4B1.1(a), a defendant qualifies as a career offender if (1) he was at least eighteen years old at the time he committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a "crime of violence" or a "controlled substance offense"; and (3) he has at least two prior felony convictions of either a "crime of violence" or a "controlled substance offense." Under U.S.S.G. § 4B1.2(b), the term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense. Because defendant committed the instant controlled substance offense of conspiracy to distribute ecstasy between the ages of twenty-five and twenty-six, he satisfied the first two criteria. The issue was whether he had the two prior felony convictions needed to satisfy the third.

Section 4B1.2(c) explains that the term "two prior felony convictions" means (1) the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense and (2) the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of § 4A1.1(a), (b), or (c). Even if it otherwise meets the definition of a

2

controlled substance offense or crime of violence, a prior conviction must score criminal history points in order to qualify as a career offender predicate. See U.S.S.G. § 4B1.2 cmt. n.3 ("The provisions of § 4A1.2 (Definitions and Instructions for Computing Criminal History) are applicable to the counting of convictions under § 4B1.1."); see also United States v. Mason, 284 F.3d 555, 558-59 (4th Cir. 2002) ("Our court has been very clear about the role of § 4A1.2 in determining career offender status under § 4B1.1: 'Whether a prior conviction must be counted under § 4B1.1 is determined by reference to § 4A1.2.' United States v. Bacon, 94 F.3d 158, 161 (4th Cir.1996).").

In the present case, defendant's prior record contained two felony cocaine delivery convictions in Wisconsin state court. (PSR ¶¶ 35 & 36.) Defendant committed both offenses at the age of seventeen. The application notes to § 4B1.2 explain that for career offender purposes a "prior felony conviction" must be an:

> adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed. A conviction for an offense committed at age eighteen or older is an adult conviction. A conviction for an offense committed prior to age eighteen is an adult conviction if it is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted (e.g., a federal conviction for an offense committed prior to the defendant's eighteenth birthday is an adult conviction if the defendant was expressly proceeded against as an adult).

U.S.S.G. § 4B1.2 cmt. n.1. Under Wisconsin's criminal code, a person is considered an "adult" at age seventeen, see Wis. Stat. § 938.02(1); thus, defendant's convictions set forth in ¶¶ 35 and 36 qualified as adult felony convictions. However, that did not end the inquiry. As noted above, a career offender predicate must also score criminal history points under § 4A1.2. Section 4A1.2(d) explains when convictions for offenses committed prior to age eighteen are counted:

3

> (1) If the defendant was convicted as an adult and received a sentence of imprisonment exceeding one year and one month, add 3 points under § 4A1.1(a) for each such sentence.
>
> (2) In any other case,
>
> (A) add 2 points under § 4A1.1(b) for each adult or juvenile sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense;
>
> (B) add 1 point under § 4A1.1(c) for each adult or juvenile sentence imposed within five years of the defendant's commencement of the instant offense not covered in (A).

U.S.S.G. § 4A1.2(d). In the present case, defendant's cocaine delivery convictions did not score criminal history points because the sentences were to terms of probation and were imposed more than five years before defendant's commencement of the instant offense.[2] Thus, because these convictions did not score criminal history points they were not proper career offender predicates. See Mason, 284 F.3d at 559.

Defendant also had two prior cocaine possession convictions, one in Wisconsin and one in Indiana, which he committed after age eighteen and which did score criminal history points. However, simple possession does not constitute a controlled substance offense under § 4B1.2(b). Salinas v. United States, 547 U.S. 188 (2006). Therefore, these convictions also did not qualify as predicates, and I accordingly found that defendant was not a career offender.[3]

---

[2]Defendant also received a county jail term on one of those convictions, but he was released from that term more than five years before his commencement of the instant offense.

[3]This case demonstrated how the complexity of the career offender guideline can flummox even the shrewdest lawyers and probation officers, with potentially dramatic consequences. Defendant faced a guideline sentence more than three times longer under the career offender provision. One wonders how many prisoners languish behind bars for years under an improper career offender designation.

4

## II. DEPARTURE

**A. Section 5K1.1 Factors**

The government moved for a 5-level downward departure based on defendant's substantial assistance. In ruling on such a motion, the court considers the factors set forth in U.S.S.G. § 5K1.1:

(1) the significance and usefulness of the defendant's assistance;

(2) the truthfulness, completeness, and reliability of any information or testimony;

(3) the nature and extent of the assistance;

(4) any injury suffered, or any danger or risk of injury; and

(5) the timeliness of the assistance.

U.S.S.G. § 5K1.1(a).

The court should give substantial weight to the government's evaluation of the extent of the defendant's assistance, but the extent of the departure is within the court's discretion. I attempt to link the departure to the structure of the guidelines and typically use the method suggested by the Seventh Circuit of granting something on the order of a 2-level adjustment for each factor found to be fully present, with a lesser reduction for those factors partially present. See United States v. Matthews, 463 F. Supp. 2d 916, 918 (E.D. Wis. 2006).

**B. Analysis**

In the present case, I awarded 2 levels under the first 5K1.1 factor, as defendant's assistance was significant and useful in identifying and obtaining the convictions of his suppliers, Chameng and Cheng Lee, and the convictions of his co-defendants in this case, Nicholas Lewandowski and Andrew Cox. The government indicated that defendant was the

5

only individual able to provide information about the Lees and Cox. Cox had previously introduced defendant to the Lees in exchange for 10% of defendant's profits.

I awarded 1 level under the second factor, as the government believed that defendant's information was truthful and complete, and corroborated by other evidence. I did not award more because there was no evidence that defendant's information was relied upon, by judges or juries for example.

I awarded 2 levels under the third factor, as defendant not only debriefed about his and others' involvement in drug trafficking, but he also made calls to, and a controlled buy of 4000 ecstasy pills from, the Lees, while wearing a wire, leading to their arrest. He also made monitored calls to Cox and agreed to testify against the Lees and his co-defendants.

I awarded no reduction under the fourth factor, as there was no evidence of injury or any particular danger or risk. Finally, I awarded 1 level under the fifth factor, as defendant agreed to cooperate immediately on his arrest; there was no evidence that the timing was particularly significant in any investigation, supporting a further reduction.

In a letter to the court, defendant complained that law enforcement did not follow through on some of the information he provided, but that did not persuade me to reduce the range any further. Therefore, I granted a total reduction of 6 levels, making the range 24-30 months.

### III. SENTENCE

**A.  Section 3553(a) Factors**

In imposing the ultimate sentence, the district court must consider the factors set forth in 18 U.S.C. § 3553(a):

6

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). After considering these factors, the court must impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing, which are just punishment, deterrence, protection of the public and rehabilitation of the defendant. 18 U.S.C. § 3553(a)(2). Although the guidelines should be the starting point and the initial benchmark in making this determination, Gall v. United States, 128 S. Ct. 586, 596 (2007), the district court may not presume that the guideline sentence is the correct one, Rita v. United States, 127 S. Ct. 2456, 2465 (2007). Rather, after accurately calculating the advisory range so that it can derive whatever insight the guidelines have to offer, the district court must make an independent determination based on all of the § 3553(a) factors without any "thumb on the scale favoring a guideline sentence." United States v. Sachsenmaier, 491 F.3d 680, 685 (7th

Cir. 2007); see also United States v. Wilms, 495 F.3d 277, 282 (6th Cir. 2007).

**B.     Analysis**

    **1.     The Offense**

In May and June of 2007, an undercover officer bought ecstasy tablets from Lewandowski, whom defendant supplied, on several occasions. Officers executed a search warrant at defendant's residence on June 15, 2007, and in a post-arrest statement defendant implicated Cox, who had introduced defendant to his ecstasy suppliers, the Lees, in exchange for a cut of the proceeds. Although the conspiracy lasted less than two months, the offense was nevertheless serious; defendant acted as the distributor in a conspiracy that involved a total of 683 ecstasy tablets and cost the government $8020 in buy money.

    **2.     The Defendant**

Defendant was twenty-six years old and, as discussed in determining the guidelines, this was far from his first involvement in drug activity. In September 1999 and January 2000, defendant was convicted of cocaine delivery. Although defendant was seventeen when he committed those offenses, they were adult convictions under state law. The state court placed defendant on probation in both cases, which he was able to complete. Defendant also had on his record a juvenile adjudication for obstructing an officer and two adult convictions for cocaine possession, and he faced revocation proceedings regarding the second possession case in Indiana.

Despite all of his brushes with the law, defendant's family seemed to be standing by him. Several family members and other supporters appeared at sentencing and submitted letter to the court. The PSR and the letters indicated that despite a good childhood, defendant started

8

using drugs in high school, apparently to try to fit in. In 2006, defendant was shot in what appeared to be a drug-related incident, and defendant and his parents sought to attribute his conduct in this case to the resulting medical problems, specifically his need to obtain medication without insurance. I did not know if that was the motive, but even if it was, defendant had to start making better choices: ask for help from family or get a job that provided insurance; dealing drugs was no solution. I also admonished defendant that no judge would go easy on him from here on out if he re-involved himself in drugs.

Defendant was engaged to be married, but it appeared that his relationship ended based on his arrest in this case. He had no children. Defendant obtained his HSED and some post-secondary education, but he presented with a fairly limited employment history, aside from working with a coffee business his father helped him set up.

### 3. The Sentence

The guidelines called for a term of 24-30 months after the departure. Under all of the circumstances, I found a sentence of 24 months sufficient but not greater than necessary. Defendant barely missed qualifying as a career offender, which resulted in a significantly lower guideline range. He received a further reduction under the 5K1.1 motion. I considered the arguments for leniency defendant presented in court and in his sentencing memorandum, but concluded that to reduce the sentence even further would fail to provide just punishment given the seriousness of the offense and fail to account for defendant's serious record with drugs. See 18 U.S.C. § 3553(a)(2)(A) & (C). A lesser term would also fail to deter him from future violations, as lesser sanctions of probation and county jail time had not worked. See 18 U.S.C.

§ 3553(a)(2)(B).[4]

I specifically considered defendant's medical condition, but declined to reduce the sentence based on that factor. Defendant raised issues with the care he received at the local jail where he was detained pre-trial, but I saw no reason to believe the Bureau of Prisons could not deal with his condition, particularly given the length of this sentence. I recommended consideration for a medical facility within the Bureau. I also considered defendant's argument that his sentence should be comparable with the Lees, who received prison terms of 12 months and 1 day. However, the Lees had no prior record and qualified for the safety valve reduction. Further, given the guideline range I ultimately adopted, there was no significant disparity with the Lees.

Finally, I reviewed the character letters defendant submitted, which described his positive personal qualities. However, I concluded that these factors were adequately accounted for by a sentence at the low end of the range; they did not persuade me to impose a lesser term.

## IV. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 24 months. I recommended that he be evaluated for placement at a medical facility and otherwise be placed as close to his family as possible, and that he participate in any drug treatment programs available. Defendant asked that the sentence run concurrently with the Indiana revocation sentence he faced, but that sentence had not yet been imposed, and the district

---

[4] In any event, the arguments in the defense memo pre-supposed a guideline range much higher based on the career offender provision. The sentence I imposed was actually within the range suggested in the memo.

10

court may not order a sentence run concurrently with another term that does not yet exist. See Romandine v. United States, 206 F.3d 731, 737-38 (7th Cir. 2000). Whether that sentence would be concurrent would be up to Indiana authorities, but I did state that I had no opposition to a concurrent term.

Upon completion of this prison term, I ordered defendant to serve five years of supervised release. I selected a term above the minimum required by statute and recommended by the guidelines in order to protect the public, to ensure that defendant was monitored for future violations and to make sure that he addressed his treatment needs. As conditions, I ordered drug testing and treatment, mental health treatment, repayment of the buy money, and financial conditions to ensure that he paid and lived within his means. Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 16th day of May, 2008.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge